UNITED STATES of America,
Plaintiff,

v.

Christine M. WALLACE, Defendant.

No. 05–06921 MP.

United States District Court,
D. Arizona.

Sept. 5, 2006.

Jennifer Jean Maldonado, U.S. Attorney's Office, Tucson, AZ, for Plaintiff.

## ORDER (CVB)

CHARLES R. PYLE, U.S. Magistrate Judge.

Defendant Christine M. Wallace [hereafter "Wallace"] moves the Court for an order dismissing the two citations at issue in this matter. Plaintiff, the United States of America [hereafter, "the Government"] opposes the motion. For the reasons discussed herein, the motion is granted.

## I. FACTS

The United States Forest Service [hereafter "USFS"] designated the land in the Coronado National Forest, adjacent to the final twenty-eight miles of the Catalina Highway leading to the summit of Mount

Lemmon, as the Mt. Lemmon High Impact Recreation Area [hereafter "HIRA"]. Mt. Lemmon has long been a popular place for recreation and retreat from the heat, where Tucsonans can reach the 9,000 foot summit in an hour's drive from the center of the city. The USFS charges vehicles five dollars for a day permit to travel into the HIRA. The fee is waived if a person is traveling nonstop into and out of the HIRA; is stopping only at scenic overlooks or vista points; or is traveling to a private residence. The fee collection station is located at milepost 5 on the Catalina Highway.

On September 10, 2005, Wallace drove up the Catalina Highway to the General Hitchcock campground and picnic area. Wallace did not purchase the required day pass. Wallace parked her car "in front of a locked gate" [Defendant's Memorandum of Points and Authorities in Support of Dismissal of Charges, hereafter "MTD", p. 2, 1.27] and went for a hike "into the back country." MTD, p. 3, 1.1.

When she returned, Wallace found a citation for failure to pay the fee on her car. The citation, No. F2080160, charged Wallace with "failure to pay fee," in violation of 16 U.S.C. § 551 and 36 C.F.R. § 261.15. The citation indicated the fine would be $30.00. The Statement of Probable Cause on the citation reads as follows:

I state that on 9/10, 2005, while exercising my duties as a law enforcement officer in the District of Arizona in the Catalina R.D., on the Coronado N.F., at the entrance to General Hitchcock C.G.[1], I observed a white Nissan, AZ. # 967 BZZ, parked without a Catalina Mt. Pass Displayed. This vehicle has had 4 "Opportunity To Pay" Notices previously issued on it which remain unpaid. I

wrote a violation notice and photographed the vehicle. The driver was not present.

Wallace maintains that the General Hitchcock Campground Picnic area has been closed more than two years. MTD, p. 2, 11.27–28. The Government concedes that the site was closed on September 10, 2005 and that Wallace was parked outside the locked entrance to the site. The Government argues that because some services are still available at the General Hitchcock Campground, a fee is nonetheless required.

Arguably, any "services" that did exist at the long-closed site were no longer being maintained by the Government and would not be suitable for public use. In any event, where Wallace parked her car is the determinative fact, not whether services existed at the site of her hike.

A week later, on September 17, 2005, Wallace "parked her car approximately .2 miles from the Marshall Gulch trailhead in the Santa Catalina Mountain range," MTD, p. 3, 11.3–4, and went for a hike.[2] Once again, Wallace did not pay the vehicle permit fee that day. This time, when she returned from her hike, Wallace was confronted by a USFS Ranger who personally served her with a citation (# F2080162). The citation described the same offense as the citation issued on September 10, 2005. As probable cause for the citation, the Ranger stated in part, "at the Marshall Gulch Picnic Area, I observed a white Nissan, AZ. # 967 BZZ parked without displaying a Catalina Mt. pass." The Ranger also referred to the previous four warnings and the one violation notice associated with "this vehicle" as well as Wallace's statements that she did not have to pay the fee.

---

1. Presumably "R.D." means Ranger District, "N.F." means National Forest, and "C.G." means Campground.

2. With respect to both events, there is no evidence that Wallace, other than walking on a trail, utilized any government maintained service or facility.

## II. *LAW*

According to the Government, Wallace was required to purchase a pass to travel up the Catalina Highway, citing as authority the Federal Lands Recreation Enhancement Act [hereafter "FLREA"], 16 U.S.C. §§ 6801, *et. seq.* Interpreting this statute is pivotal to the resolution of this case. Understanding the history of USFS's authority to charge recreation fees clarifies the meaning of the FLREA.

In order to make outdoor recreation resources more accessible and available, Congress passed the Land and Water Conservation Fund Act of 1965, Pub. L. No. 88–578, 78 STAT. 89 [hereafter "LWCFA"]. The focus of expenditures was on "acquisition and development of needed land and water areas and facilities." LWCFA, § 1. The President was authorized to designate land or water areas administered by various federal agencies, including USFS, "at which entrance, admission and other forms of recreation user fees shall be charged." LWCFA, § 2(a). The concept of charging fees in the form of an annual or daily pass for an automobile, regardless of the number of occupants, was a part of this Act. LWCFA, § 2(a)(i) and (ii). As to when these fees could be charged, the Act provided:

> Entrance and admission fees may be charged at areas administered primarily for scenic, scientific, historical, cultural or recreational purposes. No entrance or admission fee shall be charged except at such areas or portions thereof administered by a Federal agency where recreation services are provided at Federal expense.

In sum, the LWCFA allowed federal agencies to charge entrance and admission fees on lands that they administered and lands where they provided "recreation services" at federal expense.

Integral to this concept was the emphasis on selling a nationwide pass-the Golden Eagle Pass. Initially, both the receipts from the sale of the pass and the uniformity of collecting the fees at federal agency lands, failed. 1972 U.S.Code Cong. and Adm. News 2824–2826; 1973 U.S.Code Cong. and Adm. News 3258. As the LWCFA program was about to expire, Congress amended the law to permit entrance fees only at National Parks and National Monuments. Amendment to Land and Water Conservation Fund Act 1972, Pub.L. No. 92–347, 86 Stat. 459. Under the new law, the USFS was allowed to charge special recreation use fees for providing "specialized facilities, equipment or services at Federal expense." *Id.* The meaning of "specialized facilities" was discussed in House Report 92–742 as follows:

> During both the Subcommittee and Full Committee deliberations, it was emphasized that specialized facilities do not include the basic recreation facilities which are commonly associated with, or incidental to, day use of an outdoor area. No special charge is intended to be imposed, under this provision of the bill, for the use of roads, trails, overlooks, visitor centers, wayside exhibits, lightly developed or back country campgrounds, or for picnic areas.

The statute and the corresponding regulation was changed to clarify that recreation use fees could not be charged for certain services, whether used singly or in combination. These services included: "Drinking water, wayside exhibits, roads, overlook sites, visitors' centers, scenic drives, toilet facilities, picnic tables and boat ramps." Amendment to Land and Water Conservation Fund Act 1972, Pub. L. No. 92–347, 86 Stat. 459; 16 U.S.C. § 460 L–6a(b); 36 C.F.R. § 71.2(c).

In 1993, Congress expanded the areas where admission fees could be charged.

The LWCFA was amended to include National Conservation Areas, National Monuments, National Scenic Areas, "and no more than 21 areas of concentrated public use." These were defined as:

an area that is managed primarily for outdoor recreation purposes, contains at least one major recreation attraction, where facilities and services necessary to accommodate heavy public use are provided, and public access to the area is provided in such a manner that admission fees can be efficiently collected at one or more centralized locations.

Omnibus Budget Reconciliation Act of 1993, Pub.L. No. 103–66, § 10001, 107 Stat. 312.

The litany of services that could *not* be charged for was amended to remove boat ramps. *Id.* at § 10002. This amendment also allowed the Government to charge for providing picnic tables in combination with other services, but still prohibited charging for picnic tables provided away from other services. *Id.* Additionally, "specialized outdoor recreation sites" was defined as including, but not limited to, campgrounds, swimming sites, boat launch facilities and managed parking lots. *Id.*

In 1996, Congress enacted the Recreational Fee Demonstration Program [hereafter "RFDP"]. Omnibus Consolidated Recissions and Appropriations Act of 1996, Pub. L. No. 104–134, § 315, 111 Stat. 1321.[3] Four agencies, the Bureau of Land Management, the National Park Service, the U.S. Fish and Wildlife Service, and the USFS, were each directed to set up "no fewer than 10, but as many as 50, areas, sites or projects for fee demonstration." *Id.*, subsc. b. The law provided that:

For each such demonstration, the Secretary, notwithstanding any other provision of law—(1) shall charge and collect fees for admission to the area or for the use of outdoor recreation sites, facilities, visitor centers, equipment, and services by individuals and groups or any combination thereof.

*Id.*

Essentially, without providing any guidance as to what the area should look like or what service must be provided, Congress allowed these agencies to charge admission fees in these limited circumstances. In all other areas, the LWCFA continued in effect with Congressional limitations on when fees could be charged by a federal agency.

What is now known as the Mt. Lemmon HIRA was a demonstration fee project under the RFDP, in which the USFS charged an entrance fee to proceed up the Catalina Highway, unless you were a resident or traveled for a commercial purpose.

The USFS had unrestricted authority under the RFDP as compared to the restrictions of the LWCFA, but their authority to charge fees under the RFDP was set to expire in 2004. On October 8, 2003, H.R. 3283 was introduced to continue the fee collecting authority. H.R. 3283, 108th Cong. (1st Sess.2003). The stated need for the fees was no longer land acquisition and development, but principally "to reduce the huge deferred maintenance backlog." H.R. 3283, § 2(a)(3).

The original House Bill provided for three types of fees: "basic recreation fees, expanded recreation fees, and special recreation permit fees," H.R. 3283, § 4(a), and listed four activities for which the appropriate federal agency could *not* charge, H.R. 3283, § 4(d). Those four prohibitions were preserved in the ultimate enactment of this legislation and appear, with minor changes, at 16 U.S.C. § 6802(d)(1)(G),(H),(I) and (J).[4] The ex-

---

3. The RFDP was enacted as part of an Omnibus bill without any committee hearings.

4. In § 6802(d)(1)(G) and (H), the last phrase in the original Bill, "of a Federal land man-

ceptions ultimately set forth in 16 U.S.C. § 6802(d)(1)(G) and (H) were part of the original version of the LWCFA. Land and Water Conservation Fund Act of 1964, Pub.L. No. 88–578, § 2(a), 78 Stat. 89.

In the original Bill, the authorization to charge the Basic Recreation Fee included the areas authorized for entrance fees in the LWCFA and "areas of substantial investment by a Federal land management agency." HB 3283, § 5(a)(7). Such areas:

(A) are managed for recreation purposes or contain at least one major visitor attraction; and (B) have had substantial investments, as determined by the Secretary concerned, made in their facilities or services, in restoring resource degradation in areas of concentrated public use, including a visitor or interpretive center, a trailhead facility, or a developed parking lot, or in requiring the presence of personnel of a Federal land management agency.

*Id.*

The Bill called for the repeal of the LWCFA and the RFDP. Essentially, the unlimited fee-setting authority provided by the RFDP would be carried forward without the restrictions of the LWCFA, other than travel through fee areas on federal highways and travel to a private residence within the area. Before enactment, the original Bill was substantially amended.

After a subcommittee hearing and a full committee hearing, Congressman Richard Pombo offered an amendment to H.R. 3283 that, with the addition of a minor verbal amendment,[5] ultimately was enacted as the Federal Lands Recreation Enhancement Act [hereafter "FLREA"], Pub. L. No. 108–447, Div. J, Title VIII, § 801,

et. seq. 118 Stat. 2809. In the Committee Action section of the House Report on H.R. 3283, one reason stated for Rep. Pombo's amendment was:

First, the amendment clarified where a fee may or may not be charged while also establishing types of fees. The section was overly prescriptive to alleviate concerns of those who no longer trust certain federal land management agencies with the recreation fee authority. For example, the amendment made clear that the USFS and the BLM will not be permitted to charge solely for parking, scenic pullouts, and other non-developed areas while the NPS and the FWS may continue to charge an entrance fee.

Rept. 108–790, House of Representatives, 108th Cong. (1st Sess.2003).

Congressman Pombo's amendment made three changes relevant to the issue before this Court. First, the amendment added seven areas where fees could not be imposed: 1) solely parking; 2) general access; 3) dispersed areas; 4) traveling without using facilities or services; 5) camping at undeveloped sites; 6) overlooks or scenic pullouts; and 7) extra services necessary to meet the needs of the disabled. 16 U.S.C. § 6802(d)(1)(A), (B), (C), (D), (E), (F) and (K). The first six prohibitions were drafted to prevent the government agency from charging for activities that did not utilize significant federal services.

The second relevant change made by Congressman Pombo's amendment was the revision of H.B. 3283, § 5. The term "basic recreation fee" was changed to "standard amenity recreation fee." Also

---

agement agency at which fees are charged under this Act" was changed to "at which recreation fees are charged under this chapter." In § 6802(d)(1)(H), the language "boat and aircraft" was added after "noncommer-

cial vehicle." The word "Tribal" was added to § 6802(d)(1)(J).

**5.** The addition of "horseback riding through" to 16 U.S.C. § 6802(d)(1)(D) was added by a verbal amendment.

removed from the list of permissible fee areas were units of the National Park System, National Recreation Areas, National Monuments, and National Scenic Areas. In effect, the amendment reverted to the LWCFA format of allowing the Government to charge an entrance fee for National Parks and National Monuments, but prohibited entrance fees for lands managed by the BLM or USFS. *See* 16 U.S.C. § 6802(e).

The amendment also removed H.B. 3283, § 5(a)(7) dealing with "areas of substantial investment by a Federal land management agency." In its place, the amendment authorized charging a standard amenity recreation fee for a "destination visitor or interpretive center that provides a broad range of interpretive services, programs and media." 16 U.S.C. § 6802(f)(3). A fee could be charged for an "area" that, among other things, contained all of the following amenities: designated developed parking, permanent toilet facility, permanent trash receptacle, interpretive sign, exhibit or kiosk, picnic tables, and security services. 16 U.S.C. § 6802(f)(4). The reference to "trailhead facility" as being a feature of an "area" where fees can be charged was removed.

The third relevant change made by Congressman Pombo's amendment was the addition of the following provision:

(4) **No restriction on recreation opportunities.** Nothing in this chapter shall limit the use of recreation opportunities only to areas designated for collection of recreation fees.

Here again, Congress evidenced its intent to give citizens access to recreation areas on BLM and USFS land where significant federal services are not provided.

## III. *ANALYSIS*

The provisions of the FLREA apply to this case. The Court must determine if the FLREA authorizes the USFS to charge Wallace a fee to park her car within the Mt. Lemmon HIRA. Specifically, the Court must determine whether the USFS interpretation and application of the FLREA is consistent with the statutory provisions and Congressional intent discussed herein. In conducting this analysis, the Court will apply the two-part test enunciated in *Chevron U.S.A., Inc., v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984):

First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines that Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on the permissible construction of the statute.

*Chevron U.S.A., Inc.,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82.

■ A court must "reject those constructions that are contrary to clear congressional intent or that frustrate the policy that Congress sought to implement." *Schneider v. Chertoff,* 450 F.3d 944, 952 (2006); *Chevron, supra.,* n. 9.

Both Wallace and the Government agree that the legislative intent is clear from the statutory language but disagree as to the meaning of the statute. Because two citations are involved and Wallace parked her car at two different locations, the citations must be analyzed separately.

## A. *THE GENERAL HITCHCOCK CAMPGROUND CITATION*

Because the USFS locked and closed the parking lot, Wallace parked outside of the developed parking area at the campground. She then hiked into "back country," a dispersed area of the Coronado National Forest. Wallace was cited for this activity.

Wallace argues that the plain reading of the sub-subsection on prohibition on fees for certain activities or services (16 U.S.C. § 6802(d)(1)) and the provision prohibiting USFS from charging entrance fees (16 U.S.C. § 6802(e)(2)) "tells a reasonable person that she is free to enter Federal recreational lands, park a car and take a walk on a forest trail without threat of criminal prosecution..." MTD, p. 6, ll. 27–28. Wallace does acknowledge that if she uses certain federally provided amenities, she can be charged a fee. She argues however, that by making the entire Catalina Highway part of the HIRA, the USFS is unlawfully charging an access fee to dispersed areas of the forest. Reply Memorandum, p. 4.

The Government asserts that the Mt. Lemmon HIRA is a duly authorized and lawful "area" under 16 U.S.C. § 6802(f)(4) for which fees can be charged, with limited exceptions. The only applicable exceptions are when a person drives through the area without stopping, drives to a vista point, or drives to a private residence or business. Response, Ex. E. Except for the addition of vista points to the list of exclusions from the permit requirements, the Government's interpretation is no different from the USFS' interpretation that their fee-charging authority under the RFDP is unrestricted. As did the USFS, the Government ignores the prohibitions established by Rep. Pombo's amendment.

Even assuming that the Mt. Lemmon HIRA is an "area" meeting the requirement of 16 U.S.C. § 6802(f)(4), the prohibition on fees for certain activities or services, 16 U.S.C. § 6802(d)(1), *still* applies within that "area." *See* 16 U.S.C. § 6802(f) ("except as limited by subsection (d) of this section"). The first listed prohibition makes it unlawful to charge a fee, "[s]olely for parking, undesignated parking, or picnicking along roads or trailsides."

Unduly focusing on the "solely for parking" language, the Government argues:

> The fees for the Mt. Lemmon HIRA are not charged solely for parking. Rather, they are charged for use of a recreation area that contains all the amenities and meets all the other requirements of HIRA and the Forest Service's interim implementation guidelines. The use fee is assessed by vehicle (the pass must be displayed on a car), but not for parking. Response, p. 11.

Applying the Government's reasoning, while the driver of a car may legally park her car within the HIRA, she cannot get out of her car without paying a fee. With the possible exception of amorous teenagers, the concept of parking one's car but not getting out to enjoy the fresh air and take in the beautiful sights, is just not a commonplace occurrence.

■ Here, the citations issued to Wallace make clear that the violations were for parking within the HIRA without a permit. The Government even acknowledges this in its Responsive Memorandum: "Defendant was required to pay the daily use fee for the Mt. Lemmon HIRA when she parked her car in the HIRA." Response, p. 8, ll. 1–2; the signs posted by the USFS require a fee for "roadside parking." Response, Ex. E..

To be correctly interpreted, the parking prohibition must be read in its entirety and within the context of the other prohibitions listed in 16 U.S.C. § 6802(d)(1);

along with prohibiting fees "solely for parking," the statute also prohibits the imposition of fees for "undesignated parking or picnicking along roads or trailsides."

This clause can mean one of two things: that the USFS cannot charge for picnicking along a road or trailside or for parking anywhere in the HIRA; or, that the USFS cannot charge for picnicking or parking along roads or trailsides, whether or not the parking is in a designated or undesignated area. In other words, is the phrase, "along roads or trailsides" only a limitation to the fee prohibition for picnicking? For reasons that will be discussed in connection with the Marshall Gulch citation, where the distinction is more determinative, the Court finds that the second interpretation is correct.

When Wallace parked outside the closed General Hitchcock Campground, she unquestionably parked "along a road or trailside." Thus, even under the more restrictive interpretation of 16 U.S.C. § 6802(d)(1)(A), the USFS was prohibited from charging Wallace a fee. The General Hitchcock Campground citation is dismissed with prejudice.[6]

**6.** The parties also discuss the prohibition against charging fees for "hiking through" federal lands. This prohibition prevents the USFS from charging a fee for "persons who are driving through, walking through, boating through, horseback riding through, or hiking through Federal recreational lands and waters without using the facilities and services." 16 U.S.C. § 6802(d)(1)(D).

Wallace argues that when read together with the parking prohibition, the hiking through prohibition means that a person cannot be charged for merely parking and hiking. In doing so, Wallace interprets "through" to mean "within." Reply, pp. 8–10. The Court need not struggle with this strained interpretation.

The Government on the other hand, defines "hiking through" to mean that the hike must

## B. THE MARSHALL GULCH PICNIC AREA CITATION

Wallace maintains that on September 17, 2005, she parked ".2 miles from the Marshall Gulch trailhead." MTD, p. 3, ll.3–4. The citation issued to Wallace states that her white Nissan was parked "at the Marshall Gulch Picnic Area." Neither party established whether the picnic area was open or closed. Neither party established whether the gate to the parking area was open or locked and closed. Thus, it is not clear whether Wallace parked along a road or trailside, or whether she parked in "designated developed parking." The distinction is significant.

During oral argument, the Government asserted that the Mt. Lemmon HIRA is a legitimate "area" where a "standard amenity recreation fee" can be charged for parking and using the recreational facilities in the fee area, to-wit, hiking. Wallace argued that the parking prohibition prevented the Government from charging her for parking. She also argued that the Mt. Lemmon HIRA is not a lawful "area" where the fee can be charged. If Wallace is correct on either argument, this citation must also be dismissed.

begin outside the fee area and reach a destination that is also outside the fee area. Response, p. 11. That you cannot charge a fee for hiking *through* a fee area does not imply that you can charge for hiking *within* a fee area. Such an interpretation would make the parking by a trailside prohibition entirely meaningless.

Clearly, this provision was added by Rep. Pombo's amendment in order to bring the statutory language in conformance with the holding in *United States v. Maris*, 987 F.Supp. 865 (D.Or.1997) where the court determined that an RFDP fee for merely driving through a fee area without using federal services amounted to toll fee prohibited by federal law. Congress agreed with the *Maris* decision when it prohibited charging a fee for traveling through a FLREA established fee area without using Federal services.

As previously stated, there are two ways to interpret the parking prohibition listed in 16 U.S.C. § 6802(d)(1); either that the USFS cannot charge for designated or undesignated parking anywhere in the HIRA; or, that the USFS cannot charge for parking along roads or trailsides whether or not the parking is designated or undesignated. If the Court adopts the first interpretation, then Wallace's Motion must be granted. If the Court adopts the second interpretation, then disputed factual issues remain for trial and the FLREA must be applied based upon where Wallace was parked on September 17, 2005.

The FLREA describes four types of parking: parking, undesignated parking, designated developed parking, and paved parking. The prohibition at issue in this case is parking and undesignated parking. 16 U.S.C. § 6802(d)(1)(A). The description of an "area" where a standard amenity recreation fee *can be* charged refers to "designated developed parking." 16 U.S.C. § 6802(f)(4)(D)(i). In order to charge an "expanded amenity recreation fee" for a boat launch or swimming site, the USFS must consider whether "paved parking" is provided. 16 U.S.C. § 6802(g)(2)(B) and (g)(2)(J)(iv). The meaning of "paved parking" and "undesignated parking" is clear. Whether there is a distinction between "parking" and "designated developed parking" in the statute is an important factor in determining if the parking prohibition applies throughout a fee area, or only along roads and trailsides.

The issue is whether the words "parking" and "undesignated parking" are independent of or modified by the phrase "along roads or trailsides." The Court reviewed two grammar reference books to determine if the placement of commas directed the correct interpretation. It did

not. Garner, Bryan A., The Elements of Legal Style, Oxford University Press (1991); Wydick, Richard C., Plain English for Lawyers, 5th ed., Caroline Academic Press (2005).

The words "parking" and "undesignated parking" are used in the same phrase, so they must each mean something different; that is "parking" means "designated parking." Clearly, Congress anticipated that there would be picnicking along roads and trailsides and prohibited the charging of a fee for that activity. That Congress envisioned both designated and undesignated parking along roads and trailsides is also clear.

In its Interim Implementation Guidelines for the FLREA, the USFS defined "trailside" in part as "an undeveloped point on a trail where access can be obtained. There are few to no facilities or services associated with the trail."[7] MTD, Ex. C., p. 23. The Business Plan for the Santa Catalina Mountains Fee Demonstration Project, # 304 describes "trails and trailheads" as follows:

These facilities range from parking areas with toilets nearby to newly constructed delineated and curbed parking lots to unbounded dirt areas. Trailheads in the Catalinas provide access to about 100 miles of trails.

Response, Ex. A., p. 4.

Parking considerations dominate the description of trails and trailheads. From this and other documents, and very likely from their own personal experience, members of Congress would have known that there may or may not be designated parking at roadside picnic tables and trail access points away from developed areas.

7. This definition excludes the existence of trailsides within an HIRA, a clearly incorrect interpretation of the statute.

While the clear language of the prohibition establishes this interpretation, other considerations confirm that it is correct. The parking prohibition must be read in the context of the prohibitions against charging fees for general access, dispersed areas and camping at undeveloped sites. The connection between parking along roads and trailsides and access to dispersed areas is a clear one. The undeveloped campsite prohibition is also clear. Unless you backpacked in from outside the area, or obtained a ride, you would inevitably have to park somewhere within the HIRA to camp at an undeveloped site. Under the Government's interpretation, even though clearly prohibited by statute, a person could be charged for parking and using an undeveloped campsite.

Clearly Congress intended that the public have free access to undeveloped federal lands for purposes of recreation, including hiking. Interpreting the parking fee prohibition to affect only parking away from developed sites, i.e., along roads or trailsides, is consistent with that legislative purpose.

The question becomes, where can the USFS charge for parking? The answer depends on whether there is a difference between designated parking and "designated developed parking."

This Court interprets "designated developed parking" to mean designated parking at a developed site, whereas "parking" refers to designated parking at an undeveloped site. This interpretation gives separate and consistent meaning to each of the three terms: "parking," "undesignated parking," and "designated developed parking." This interpretation is consistent with Congress' reference to "designated developed parking" in the FLREA when discussing fees for areas of substantial Federal investments. 16 U.S.C. § 6802(f)(4)(B) and (D)(i). Moreover, this interpretation is consistent with the actual practice on federal lands-there are few or no facilities or services provided in connection with undesignated and designated parking at trailsides or roadside picnic tables; but there are multiple services and facilities at designated developed parking sites. Under the Court's interpretation, parking in "designated developed parking" would not be parking "along a road or trailside" and there would be no fee prohibition.

Here, it has not been established *where* Wallace parked in the Marshall Gulch Picnic Ground area. She says she parked .2 miles from the Marshall Gulch trailhead but there are four trailheads in Marshall Gulch. Response, Ex. A., p. 5. The citation states Wallace parked at the Marshall Gulch Picnic Area where there are twenty picnic tables, designated developed parking, permanent toilet facilities, permanent trash receptacle and interpretive signs, exhibits or kiosks. Response, Ex. A., p. 5, Reply, Ex. 8, 4th pg. Unless other grounds for dismissal exist, the issue of where Wallace was parked is an issue for trial.

### 1. THE MOUNT LEMMON HIRA

Although the Marshall Gulch Picnic Area parking does not fall within the prohibition of 16 U.S.C. § 6802(d)(1)(A), a parking fee cannot be imposed if the Mt. Lemmon HIRA is not an "area" where a standard amenity recreation fee can be charged.

The Government argues that the Mt. Lemmon HIRA satisfies all of the statutory requirements of 16 U.S.C. § 6802(f)(4) as well as the USFS' interim implementation guidelines allowing them to impose an "area" fee. Additionally, the USFS notes that the "HIRA has been analyzed by the Southwest Region Fee Board and approved by the appropriate line officer." Response, p. 10, ll.10–11.

Initially, the Court notes its skepticism. Despite the significant fee prohibitions established by Rep. Pombo's amendment, the USFS made *de minimis* changes to its previous RFDP experimental fee program on Mt. Lemmon. In fact, the *only* change the USFS made was to discontinue charging the permit fee for scenic overlooks. The Court will nonetheless carefully analyze the Government's contention.

In justifying its designation of the fee "area," the USFS describes 48 developed recreation sites in the Mt. Lemmon HIRA: "20 developed trailheads, 5 single-family campgrounds, 4 developed group site picnic/campground areas, 9 developed single-family picnic areas, and 10 developed scenic vista points." Response, p. 6, 1.25—p.7, 1.2.

With respect to the 20 developed trailheads, never in the 42 year history of fee-charging on federal lands has fee-charging for trailheads ever been contemplated by Congress; as to the 5 single-family campgrounds, if they have the required amenities, an expanded amenity recreation fee can be charged, 16 U.S.C. § 6802(g)(2)(A), but if they do not, no fee can be charged for use of these campgrounds, 16 U.S.C. § 6802(d)(1)(E); regarding the 4 developed group site picnic/campground areas, they are most appropriate for a special recreation permit fee, 16 U.S.C. 6802(h); and as to the 10 developed scenic vista points, the FLREA explicitly prohibits charging a fee for their use. 16 U.S.C. § 6802(d)(1)(F).

Of the 48 sites identified by the USFS, only nine picnic areas are appropriate for a standard amenity recreation fee, the fee at issue in this case, assuming they are in fact developed sites, and not roadside picnic tables and trash cans.

Presumably to justify charging a fee for the Mt. Lemmon HIRA, the USFS refers to activities popular in the area, such as scenic driving, skiing, picnicking, camping, hiking, nature study, bird watching, rock climbing, and bicycling. Response, p. 8.

As for scenic driving, no charge can be imposed for that activity nor for traveling to Ski Valley. Nor can a fee be imposed for any of the other activities, unless a person parks at a developed site. A fee cannot be charged for roadside picnicking nor for camping if it is in an undeveloped campground. Hiking, nature study, bird watching, and rock climbing predominately take place in dispersed areas. Bicyclists are not charged a fee unless they come up the Catalina Highway with their bicycle on a vehicle. With the exception of picnicking in developed areas, none of these activities reflect capital improvements, maintenance or significant federal investment.

Certain portions of the Interim Implementation Guidelines even contradict the FLREA. For instance, the Interim Implementation Guidelines define "trailsides" as:

> A trailside is an undeveloped point on a trail where access can be obtained. There are few to no facilities or services associated with the trail. It is not within a high impact recreation area where the criteria are met to charge a fee. The visitor is gaining access at that point to participate in an activity on the forest/unit for which there is no charge and not to avoid fee payment at an associated trailhead or fee site.

Response, Ex. B, p. 23.

To say that trailside access cannot exist within a HIRA contradicts the explicit language of the restrictive introduction to 16 U.S.C. 6802(f) ("Except as limited by subsection(d) of this section") combined with the parking prohibition, 16 U.S.C. § 6802(d)(1)(A). Moreover, there is no statutory justification for "fee payment at an associated trailhead."

The biggest problem with the Interim Implementation Guidelines is the creation

of HIRA's, which other than 16 U.S.C. § 6802(f)(4), has no basis in the FLREA. The Interim Implementation Guidelines adopt the definition of an "area" where a standard amenity recreation fee can be imposed, as described in 16 U.S.C. § 6802(f)(4). Response, Ex. B, pp. 8–9. Then the USFS created HIRA in the Interim Implementation Guidelines to justify charging a fee for "a collection of developed recreation sites," as something distinct from the "area" referred to in the statute, even though no separate distinction or designation is made in the statute. *Id.* p. 9. The ostensibly altruistic motive of the USFS was to avoid having to collect multiple fees. But permits collected at one site could certainly be valid at multiple sites. Presumably, that type of fee collection would be more difficult and expensive to implement. Ease of administration, however, does not justify a fee approach that is contrary to Congressional intent.

Finally, the Interim Implementation Guidelines do make clear that "provision of the six required amenities does not mean that there is substantial Federal investment." Response, Ex. B, p. 9. At oral argument on the motion in issue, the USFS took the position that providing each of these six amenities somewhere along the 28 mile stretch of the Catalina Highway justifies establishing the area as a HIRA. Clearly, that is not contemplated by the FLREA or even the agency's own Interim Implementation Guidelines.

Understandably, the USFS interprets its fee charging authority expansively. As evidenced by the Pombo Amendment, Congress was well aware of the position the USFS might take. Not only were the

prohibitions on fee-charging enhanced by the amendment, but an independent Recreation Response Advisory Committee ("RRAC") was authorized to review and make recommendations to USFS concerning fee charges. 16 U.S.C. § 6803(d).[8] In addition, public participation "in the development of or charging of a recreation fee" was explicitly required by Congress. 16 U.S.C. § 6803. Congress intended the RRAC's and the public's participation to be a check on any overreaching by the USFS.

For reasons not clear in the record, the RRAC for Arizona has *not* been established. For reasons not explained to this Court, public participation has *not* occurred. Perhaps nothing has happened because the USFS REA Implementation Timeframe sets no target date for the establishment of RRAC's. Response, Ex.C, attachment. So there is little to motivate the USFS to establish the RRAC's and invite public participation. The Court is hopeful that Congress' explicit FLREA requirement for RRAC's and public involvement in fee-setting, as well as the vital interrelationship between Congress and the Agency, will lead the USFS to overcome its reluctance.

In this case, the factual record is sparsely developed with respect to the expense to develop and maintain federal services in the Mt. Lemmon HIRA, what services are provided and where they are located. Presumably, there would be a more complete factual record if the RRAC *had* been established and if public participation *had* occurred.

In order to facilitate Congress' intent, the Court will avoid deciding the case

---

8. The Court notes that the makeup of the RRAC includes "backpackers" but not hikers. 16 U.S.C. 6803(d)(5)(D). Apparently the make-up of the committee favors those who make more intense use of the environment, and does not include hikers, nature studiers, and bird watchers. This exclusion of hikers from the RRAC is again consistent with 42 years of Congressional history that fees not be charged for low intensity day use of dispersed areas on federal lands.

based on whether the Mt. Lemmon HIRA complies with 16 U.S.C. § 6802(f)(4). Instead, the Court will decide the case on narrower grounds.

## 2. *THE PERMITTING FEE SIGNS*

While both parties agree that the sign was in place on the dates Wallace received her citations, Response, Ex. E, the Government argues that the sign establishes that Wallace had notice of the fee, thus satisfying the Due Process Clause. Response, pp. 12–13. Wallace argues that the sign is misleading and that her due process rights were violated. Reply, pp. 10–11. Because the signs are so determinative of this issue, a copy of Response Exhibit E is attached as Attachment 1 to this Order.

This case does not raise due process concerns. Instead, the sign itself is so directly connected to the exercise of the Government's fee-collecting authority and so contradictory to the express statutory prohibitions on fee-collecting, that the posting of the sign itself was an *ultra vires* act and essentially a nullity.

██ It is axiomatic that the authority of a federal agency to carry on governmental functions is defined and circumscribed by Congress. *Stark v. Wickard,* 321 U.S. 288, 309 64 S.Ct. 559, 571, 88 L.Ed. 733 (1944). The responsibility for determining the limits of statutory grants of authority to executive branch agencies lies with the judicial branch of government. *Id.* at 310, 64 S.Ct. at 571. When a federal agency exercises authority beyond that authorized by Congress, those actions are *ultra vires. Schneider v. Chertoff,* 450 F.3d 944, 954–55 (9th Cir.2006).

██ In this case, Congress gave the USFS authority to charge a standard amenity recreation fee subject to certain restrictions. 16 U.S.C. § 6802(d) and (f). The USFS is required to "post clear notice" of the standard amenity recreation fee in each fee area. 16 U.S.C. § 6803(e)(1). In other words, signs are statutorily required and essential before the USFS can collect a fee.

In the Mt. Lemmon HIRA, the signs give notice that a permit fee must be paid for picnicking, all camping, roadside parking, trailhead use and restroom use. Response, Ex. E. As discussed earlier, charging a fee for roadside or trailside picnicking is prohibited by the FLREA; to charge a fee for "all camping" violates the explicit FLREA prohibition on charging for camping at undeveloped sites, 16 U.S.C. § 6802(d)(1)(E); Congress explicitly prohibited the Government from charging for "roadside parking," 16 U.S.C. § 6802(d)(1)(A); there is no authorization to charge a fee for using a trail; and charging for trailside parking is prohibited, 16 U.S.C. § 6802(d)(1)(A).

The present case involves the fee prohibition regarding roadside or trailside parking. The sign posted on the day Wallace parked her car at the Marshall Gulch Picnic Area contained not just marginally inaccurate information, but almost completely inaccurate information. Moreover, the signs advising what activities did not require a fee were correspondingly inaccurate. Had they been accurate, Wallace could have chosen roadside or trailside parking and legitimately avoided paying for the permit. Here, the USFS action in collecting the fees, i.e., posting the signs, was far beyond its legislative authority. Any attempt by the USFS to collect a fee for parking from Wallace was an *ultra vires* act that must be nullified. The Marshall Gulch Picnic Area citation is dismissed with prejudice.[9]

---

**9.** The Court recognizes that developing accurate signs when connecting different sites and

activities in a large area may be extremely difficult, if not pragmatically impossible.

Accordingly, Defendant's Motion to Dismiss is GRANTED. Citation numbers F2080160 and F2080162 are DISMISSED WITH PREJUDICE. Therefore, the presently set trial date of Thursday, October 19, 2006, at 1:30 p.m. is VACATED.

**ATTACHMENT 1**

**RE: USA V. WALLACE**

**NO. 05–06921 MP [CRP] (CVB)**

**EXHIBIT E**

That itself may be an indication that the Mt. Lemmon HIRA is not an area where fees should be imposed. 16 U.S.C. § 6802(f)(4)(C). Undoubtedly, the USFS is genuinely in need of the revenue it collects by imposing fees. But for forty-two years, Congress has worked to prevent the USFS from charging entrance fees in large areas. Here, the Catalina Highway provides the only reasonable access to most of the Santa Catalina Range, a mostly disperse area. The USFS needs to abide by the constraints of Congress and allow reasonable access to dispersed areas for low impact activities.

1094

**FEE STATION**
**5 MILES**
**$5 / DAY -- $20 / YEAR**
CORONADO NATIONAL FOREST

.1 miles

**FEE REQUIRED FOR**
- PICNICKING
- ALL CAMPING
- ROADSIDE PARKING
- TRAILHEADS
- RESTROOMS

.2 miles

**NO FEE FOR NON-STOP**
**TRAVEL TO / FROM**
- SUMMERHAVEN
- PRIVATE CABINS
- SKI VALLEY
- VISTA POINTS

.4 miles

**FEE REQUIRED FOR**
- PICNICKING
- ALL CAMPING
- ROADSIDE PARKING
- TRAILHEADS
- RESTROOMS

3.6 miles

**NO FEE FOR NON-STOP**
**TRAVEL TO / FROM**
- SUMMERHAVEN
- PRIVATE CABINS
- SKI VALLEY
- VISTA POINTS

3.7 miles

**FEE STATION**
**1/2 MILE**

4.6 miles

**FEE REQUIRED FOR**
- PICNICKING
- ALL CAMPING
- ROADSIDE PARKING
- TRAILHEADS
- RESTROOMS

4.7 miles

**NO FEE** LEFT LANE    **PAY FEE** RIGHT LANE

5 miles

( CATALINA HWY. FEE SIGNS )

5.1 miles

Sign on FeeStation window
when closed

5.3 miles          5.5 miles

5.6 miles, Molino Basin

5.6 miles,
Molino Basin